**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL RHYMES, | 3:17-cv-00679-MMD-CLB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |
| JOHN KEAST, *et al.,* | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Michael Rhymes ("Rhymes") against Defendants Romeo Aranas ("Aranas"), Gaylene Fukagawa ("Fukagawa"), John Keast ("Keast"), Melissa Mitchell ("Mitchell"), Candis Rambur ("Rambur"),[2] and Theresa Wickham ("Wickham") (collectively referred to as "Defendants").[3] Currently pending before the court is Defendants' motion for summary judgment. (ECF Nos. 39, 41, 44.)[4] Rhymes responded (ECF No. 45), and Defendants replied (ECF No. 46). Having thoroughly reviewed the record and papers, the court recommends that Defendants' motion for summary judgment (ECF No. 39) be denied.

///

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Candis Rumbar appears to be the defendant named as "Candice Brockway" in Rhymes's complaint. (*See* ECF No. 19.)

[3] Rhymes also named C. Lucas as a defendant in his complaint. However, on June 9, 2020, the court dismissed the claims against C. Lucas for a failure to effectuate service pursuant to Fed. R. Civ. P. 4(m). (*See* ECF No. 38.)

[4] ECF No. 41 consists of sealed documents filed in support of Defendants' motion for summary judgment. ECF No. 44 is an errata to the motion for summary judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Rhymes is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. (ECF No. 7.) On November 13, 2017, Rhymes submitted his initial complaint and an application to proceed *in forma pauperis*. (ECF Nos. 1, 1-1.) On December 4, 2018, he submitted his first amended complaint ("FAC"). (ECF No. 7.)

Pursuant to 28 U.S.C. § 1915A(a), the District Court screened the FAC on June 24, 2019. (ECF No. 9.) The Court determined the FAC could proceed on Eighth Amendment claims in Counts I, II, and III against Defendants. (*Id.*) Claims for Fourteenth Amendment due process and First Amendment retaliation were dismissed, with prejudice. (*Id.*)

### A. Factual Background Related to Count I

In Count I of the FAC, Rhymes alleges the following: Rhymes was diagnosed with glaucoma in February of 2015. (ECF No. 7 at 5.) In October of 2015, a specialist prescribed Rhymes Timolol Maleate ophthalmic eye drops to treat his glaucoma. (*Id.*) When Rhymes began receiving the eye drops, he was told that a new refill would have to be ordered every 30 days. (*Id.*) On or about January 9, 2017, Rhymes was told that the eye drops had run out and that the prescription needed to be refilled. (*Id.*) Over the course of 45 days, Rhymes repeatedly spoke with nurse Candice Brockway (Rambur), Nurse Gaylene (Fukagawa), and Nurse Melissa (Mitchell) concerning the medication and the problems he was experiencing from not receiving the eye drops. (*Id.*) Despite numerous inquiries about his medications, the nurses in the pharmacy and Brockway (Rumbar) kept stating that he had no medication in the building or in the refrigerator. (*Id.*)

After about 40 days, Rhymes spoke with Medical Director Keast on at least two occasions to try to obtain his medication. (*Id.*) Keast told Rhymes that there was no medicine for him and that there was nothing he could do for him. (*Id.*) When Rhymes asked Keast to check to see if Rhymes's medication was somewhere on the premises of the infirmary and to question nurses about the situation, Keast responded that it was not

his job to ensure that Rhymes got his medicine and that he could not make the nurses do anything. (*Id.* at 6–7.) Rhymes pointed out that this situation was causing him pain and concern and that he was going to file a grievance. (*Id.*) Rhymes then filed a grievance pointing out that, even though he notified medical staff that he needed his medication and it takes only 3 to 5 days to order medication, he had gone 97 days without medication. (*Id.*)

Based on the allegations, the Court allowed Rhymes to proceed on an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants Keast, Rambur, Fukagawa, and Mitchell. (ECF No. 9 at 7.)

### B. Factual Background Related to Count II

In Count II, Rhymes alleges the following: When Rhymes's medication did not arrive on January 9, 2017, the medical staff at the NNCC infirmary interfered with or delayed or denied him his prescribed medical treatment for over 98 days even though the medication was in their possession the entire time. (ECF No. 7 at 7.) When he inquired about his medication and asked why nobody was checking on its delivery or tracking its order, the Pharmacy nurse, Jane Doe, threatened to have him written up if he continued to question her job. (*Id.*)

Rhymes filed three medical requests asking for his medication. (*Id.*) He was not seen by a doctor until the end of April, when the eye doctor examined him and discovered cornea damage caused by the delay in receiving his eye drops. (*Id.*) When the eye doctor asked the NNCC prison nurse why Rhymes was not receiving his prescription medication, the nurse stated that Rhymes had failed to ask the pharmacy nurse to get it out of the refrigerator. (*Id.*) The nurse stated that Rhymes was never out of his medication but had never requested it. (*Id.*)

Based on the allegations, the Court allowed Rhymes to proceed on an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendant

Jane Doe pharmacy nurse when Rhymes learns that person's identity. (ECF No. 9 at 7.)[5]

### C. Factual Background Related to Count III

In Count III, Rhymes alleges the following: The NNCC Medical Department withheld medical treatment for over 98 days due to Rhymes's grievances. (ECF No. 7 at 8.) The individuals in the Medical Department who were reviewing the medical kites and the grievances were clearly refusing to investigate where the medication was or were intentionally covering up the fact that the pharmacy nurse was deliberately withholding the Rhymes's medication. (*Id.*) All responders to the Rhymes's grievances claimed that they reviewed the matter and that the eye drops were available because they had been reordered in January 2017, but the records show that the eye drops were not available until April 18, 2017, so the responders either did not check or they intentionally provided false reports in order to cover up what was a deliberate denial of medically prescribed treatment. (*Id.*) This makes Dr. Aranas, T. Wickham, and John Keast personally involved with the violation of Rhymes's constitutional rights. (*Id.*)

The Court allowed Rhymes to proceed on an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants Aranas, Wickham, and Keast. (ECF No. 9 at 9.)

### D. Defendants' Motion for Summary Judgment

On September 10, 2020, Defendants filed a motion for summary judgment. (ECF No. 39.) In the motion, Defendants argue: (1) Rhymes was not denied medications for glaucoma to his physical detriment; (2) Aranas, Keast, and Wickham did not personally participate in Rhymes's medical care; and, (3) alternatively, Defendants are entitled to qualified immunity. (*Id.*)

---

[5] Pursuant to the scheduling order, Rhymes had until April 13, 2020 to amend his pleadings. (ECF No. 28 at 1-2.) Further, discovery in this case closed on August 11, 2020. (ECF No. 37.) It does not appear Rhymes has discovered Jane Doe's identity and the time to file an amendment to his complaint has expired, thus the court recommends that Count II be dismissed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (court may grant summary judgment *sua sponte*, as long as at least one party has moved for summary judgment).

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 330. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.    DISCUSSION**

    **A.    Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes."

*Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Eighth Amendment Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The Constitution's stricture on the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104. It is well-settled law that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

In the Ninth Circuit, deliberate indifference claims are analyzed under a two-part test. "In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show . . . an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)) (internal citations and quotation marks omitted). The objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities' or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).
///

The subjective element considers the defendant's state of mind and whether the plaintiff was harmed. Only where a prison "official 'knows of and disregards an excessive risk to inmate health and safety'" is the subjective element of the test satisfied. *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)). The conduct must consist of "more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Not only must the defendant prison official have actual knowledge from which he or she can infer that a substantial risk of harm exists, but he or she must also draw that inference." *Id.* at 837. The standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other[,]" *id.* at 836, and does not include "accidental or unintentional failures to provide adequate medical care . . . ," *Estelle*, 429 U.S. at 105. Finally, the plaintiff must prove that he was harmed by the indifferent actions, though the harm need not be substantial. *Jett*, 439 F.3d at 1096.

### 1. Analysis

It appears uncontested that Rhymes has a serious medical need stemming from his glaucoma, thus the court will proceed to the subjective prong.

Rhymes alleges that from January 2017 through April 2017, he did not receive his prescribed Timolol, which are eye drops used to treat his glaucoma. (ECF No. 7 at 5; ECF No. 41-2.) Defendants argue that during the relevant time period, Rhymes did receive his Timolol, as well as attend doctor's appointments for treatment of his glaucoma. (ECF No. 39 at 5-7.) As support, Defendants provide Rhymes's Keep on Person ("KOP") medication logs and consultant's reports for optometrist appointments. (*See* ECF Nos. 41-2, 41-3.)

Defendants assert Rhymes received and signed for Timolol on January 5, 2017, January 17, 2017, February 24, 2017, and March 23, 2017.[6] (ECF No. 39 at 5.) A

---

[6] As evidence, Defendants cite to "Exhibit 2, KOP Medication Log sheets." Defendants do not provide a specific page number or pincite to assist the court in reviewing the exhibit, rather they cite to the exhibit as a whole. "[J]udges are not like

review of the KOP logs shows Rhymes received and signed for Timolol on January 5, 2017. (*See* ECF No. 41-2 at 4.) A second entry on March 21, 2017, shows "Timol (sic) x 2", however, there is no signature by this entry. (*See id.*) A third entry shows Rhymes signed for and received Timolol on April 14, 2017. (*Id.* at 3.) There is a final entry on April 29, 2017 for Timolol, with a signature by Rhymes on May 9, 2017. (*Id.* at 4.) Thus, based on the KOP records, it appears Rhymes did not receive his prescription for Timolol from approximately January 5, 2017, to at least March 21, 2017. Further, an optometry consultant's report dated April 27, 2017 notes that Rhymes was "out of Timolol for 2 months," (ECF No. 41-3 at 3), which appears consistent with Rhymes's KOP records. A review of Rhymes's medical kites also supports Rhymes's allegations that he did not receive Timolol during the timeframe in question. (*See* ECF No. 39-1 at 6, 9, 25, 27.)

Next, Defendants argue they were not deliberately indifferent to Rhymes's serious medical needs because Rhymes is admitted to the Chronic Care Clinic for his diabetes and hypertension, where his condition is regularly monitored by medical personnel. (ECF No. 39 at 6.) Defendants provide "Chronic Disease (CD) Clinic Follow-Up" records as support that Rhymes was receiving care. (*See* ECF No. 41-1.) However, these records do not include information from 2017, which is the year in question. Instead, the records include information for the years 2014, 2015, 2018, and 2019. (*Id.*) Thus, this argument fails.

Defendants also assert that Rhymes was not harmed by any delay in receiving his medication because Rhymes's medical records demonstrate he received his refills without any significant delays. (ECF No. 39 at 6.) However, as discussed above, this is

---

pigs, hunting for truffles in briefs. Nor are they archaeologists searching for treasure. Put simply, the Court is not obligated to paw over files … in order to make a party's claim." *See Krause v. Nevada Mut. Ins. Co.*, No. 2:12-cv-00342-JCM-CWH, 2014 WL 99178, at *2-3 (D. Nev. Jan. 3, 2014) (internal citations omitted). "[I]t is not the responsibility of the judiciary to sift through scattered papers in order to manufacture arguments for the parties." *Id.* Nevertheless, in reviewing the exhibit, the court could not find the information Defendants claim it contains.

1  not what Rhymes's medical records show.  Further, Rhymes contends that the delay in
2  medication resulted in severe pain and damage to his vision. (ECF No. 45 at 2.)

3  Finally, Defendants assert that there is no evidence in the record to suggest that
4  the Defendants were responsible for any alleged missed dosage of Rhymes's
5  medication or that they personally participated in the alleged violation.  (ECF No. 39 at
6  6-8.)  This argument also fails.  Rhymes asserts in his FAC (ECF No. 7) and his
7  opposition to the motion for summary judgment (ECF No. 45) that he specifically spoke
8  with Defendants Keast, Rumbar, Fukagawa, and Mitchell about his missing medication.
9  Further, Defendants Rumbar, Keast, Aranas, and Wickham all personally responded to
10 grievances related to Rhymes's medication.  (*See id*; ECF No. 39-4.)

11 In order for Defendants to demonstrate that they were not deliberately indifferent
12 to Rhymes's serious medical needs, Defendants "must come forward with evidence
13 which would entitle [them] to a directed verdict if the evidence went uncontroverted at
14 trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir.
15 2000).  However, the burden has not shifted to Rhymes as the Defendants have not
16 satisfied this initial burden.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Thus,
17 the court finds Defendants have failed to demonstrate that there are no genuine issues
18 of material fact. Accordingly, summary judgment is improper, and Defendants' motion
19 (ECF No. 39) must be denied.

20 **C.    Qualified Immunity**

21 Defendants argue that even if there were an Eighth Amendment violation, they
22 are entitled to qualified immunity because the law governing a prison official's conduct
23 regarding medication delays is not clearly established.  (ECF No. 39 at 8-9.)

24 Qualified immunity is an immunity from suit rather than a defense to liability, and
25 "ensures that officers are on notice their conduct is unlawful before being subjected to
26 suit." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014).  Qualified immunity
27 attaches when an official's conduct "does not violate clearly established statutory or
28 constitutional rights of which a reasonable person would have known." *Mullenix v.*

1  *Luna*, 577 U.S., 305, 308, n., 136 S.Ct. 305, 307, n., 193 L.Ed.2d 255 (2015) (*per curiam*).  Thus, in deciding whether officers are entitled to qualified immunity, courts consider: "(1) whether 'the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established' as of the date of the involved events 'in light of the specific context of the case.'" *Tarabochia*, 766 F.3d at 1121, quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009).  Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." *Id.* at 1125 (quotation marks omitted).  While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).  These prongs need not be addressed in any particular order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The general law regarding the medical treatment of prisoners was clearly established at the time the incidents giving rise to this case occurred.  *See Toguchi v. Chung,* 391 F.3d 1051, 1060 (9th Cir. 2004); *Clement v. Gomez*, 298 F.3d 989, 906 (9th Cir. 2002).  Moreover, the law prohibiting prison officials from intentionally denying or delaying access to medical care was also clearly established.  *See Estelle*, 429 U.S. at 104-05; *Snow*, 681 F.3d at 986.  It would be clear to a reasonable prison official knowing Rhymes's condition that denial or delay of medical care so as to disregard a serious risk to his health would be unconstitutional.

Upon resolution of factual issues, prison officials may be relieved of any liability in this case.  However, if Rhymes's version of the facts were to prevail at trial, a jury may conclude that the prison officials were deliberately indifferent to Rhymes's serious medical needs.  Under such circumstances, Defendants actions are not protected by qualified immunity.  Thus, summary judgment is inappropriate on this ground.

**IV.    CONCLUSION**

Based upon the foregoing, the court recommends that Defendants' motion for summary judgment (ECF No. 39) be denied.  However, the court recommends that the

Count II claim against Defendant Jane Doe be dismissed.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.   RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 39) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the Count I and Count III deliberate indifference claims against Defendants Aranas, Fukagawa, Keast, Mitchell, Rumbar, and Wickham **PROCEED**; and,

**IT IS FURTHER RECOMMENDED** that the Count II deliberate indifference claim against Defendant Jane Doe be **DISMISSED**.

**DATED**: November 30, 2020

_____
**UNITED STATES MAGISTRATE JUDGE**